ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DENNIS R. CONKLIN, ROSEMARIE CONKLIN Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS Apelantes<br><br>v.<br><br>ISABEL PASSALACQUA, MICHAEL J. PASSALACQUA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS Apelados | KLAN202400945 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2022CV00858<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO, DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 4 de diciembre de 2024.

Comparecen el señor Dennis R. Conklin y la señora Rosemarie Conklin, en adelante el matrimonio Conklin o los apelantes, quienes solicitan que revisemos la *Sentencia* emitida y notificada el 20 de septiembre de 2024 por el Tribunal de Primera Instancia, Sala de Carolina, en delante TPI. Mediante la misma, se declaró ha lugar la *Moción en Oposición a "Moción Solicitando Sumaria Parcial" y para que se Dicte Sentencia Sumaria a Favor de la Parte Demandada*, presentada por la señora Isabel Passalacqua y el señor Michael J. Passalacqua, en adelante el matrimonio Passalacqua o los apelados, y desestimó con perjuicio la *Demanda* presentada por los apelantes.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia* apelada.

Número Identificador

SEN2024_____

**-I-**

El matrimonio Conklin presentó una *Demanda* sobre incumplimiento de contrato y daños contra los apelados. Alegó, en síntesis; que el matrimonio Passalacqua incumplió el contrato de arrendamiento del bien inmueble entre las partes al no permitirle ejercer su opción de renovarlo. Esta conducta, a su entender, le causó daños. Ello obedece a que los apelados le exigieron el desalojo de la propiedad antes de que venciera el término pactado para ejercer la opción para renovar el contrato.[1]

Por su parte, el matrimonio Passalacqua presentó una *Contestación a Demanda* en la que admitió algunas alegaciones, negó otras y, en resumen, arguyó que el contrato de arrendamiento le permitía a cualquiera de las partes la opción de renovar el contrato; los apelados decidieron no renovarlo; y en su opinión, notificaron a los apelantes conforme al contrato.[2]

Posteriormente, los apelantes presentaron una *Moción Solicitando Sumaria Parcial* en la que adujeron que la Cláusula 17 del contrato otorga el derecho de opción, exclusivamente, a los arrendatarios.[3] En su opinión, el matrimonio Passalacqua reconoció esta exclusividad porque el 16 de diciembre de 2021 se comunicó para preguntarles si ejercerían la opción para extender el contrato. Sin embargo, días antes de finalizar el mes de diciembre, los apelados le informaron que contrataron con terceros el arrendamiento de la propiedad en cuestión, antes de la

---

[1] Apéndice de los apelantes, págs. 20-23.
[2] *Id.*, págs. 35-40.
[3] *Id.*, págs. 43-73.

fecha pactada para ejercer la opción, a saber, el 1 de febrero de 2022.

Por su parte, el matrimonio Passalacqua presentó una *Moción en Oposición a "Moción Solicitando Sumaria Parcial" y para que se Dicte Sentencia Sumaria a Favor de la Parte Demandada*.[4] En síntesis, alegó que no incumplió el contrato de arrendamiento y que auscultó si los apelantes tenían la intención de permanecer en el bien inmueble arrendado. Sin embargo, el matrimonio Conklin no ejercitó la extensión del contrato de arrendamiento por 1 año. Ante esa situación, los apelados le notificaron el aviso de desalojo una vez concluyera el término de vencimiento del contrato. En otras palabras, el matrimonio Passalacqua avisó a los apelantes "que desalojaran la propiedad al vencimiento del contrato y estos optaron por quedarse mes a mes lo cual no fue consentido por el arrendador" y en consecuencia "[l]a relación contractual entre las partes terminó con la extinción natural del contrato".

Inconformes, los apelantes presentaron una *Réplica y Oposición a Moción de Sentencia Sumaria Presentada por la Parte Demandada*, en la que reiteraron la posición que habían expuesto en la moción de sentencia sumaria.[5]

Con el beneficio de la comparecencia de ambas partes, el TPI dictó una *Sentencia* mediante la cual declaró ha lugar la *Moción de Sentencia Sumaria* a favor de los apelados y desestimó con perjuicio la *Demanda*. Determinó que los siguientes hechos no están en controversia:

---

[4] *Id.*, págs. 74-100.
[5] *Id.,* págs. 101-123.

1. El 27 de diciembre de 2020, los Demandantes, Dennis Conklin y su esposa Rose Marie Conklin, suscribieron un contrato de arrendamiento con la Demandada, Isabel Passalacqua.

2. La propiedad arrendada mediante el Contrato era un apartamento de vivienda familiar ubicado en el condominio Coral Beach en Isla Verde.

3. La Parte Demandante, los esposos Conklin, interesaban arrendar el apartamento 1904 (en adelante el "Apartamento") para poder utilizarlo como su residencia principal.

4. Según el Contrato, la Parte Demandante quedó definida, para efectos del mismo, como "Lessee".

5. Según el Contrato, la Parte Demandada quedó definida, para efectos del mismo, como "Lessor".

6. El término original del Contrato era por un (1) año, comenzando el 1 de febrero de 2021 y **venciendo el 31 de enero de 2022.**

7. El canon de arrendamiento era de $3,100.00 pagadero mensualmente.

8. Para el mes de diciembre de 2021 la Parte Demandante había efectuado todos los pagos correspondientes al canon de arrendamiento y había cumplido con todas sus obligaciones bajo el Contrato de Arrendamiento.

9. La Sección 17 del Contrato, entre otras cosas, establece lo siguiente:

   **"The Lessee has the option to renew as of February 1st**, 2021 [*sic*] at Three Thousand, Two Hundred Dollars ($3200) per month for an additional 12 month[s] term (utilities not included)".

10. El **16 de diciembre de 2021**, cuando el Contrato estaba por expirar, la Parte Demandante recibió un mensaje de texto de la Parte Demandada en la cual le preguntaban sobre su intención de ejercer la opción de renovar o no el contrato.

11. El mismo **16 de diciembre de 2021**, la parte Demandante contestó a la parte Demandada lo siguiente: "Thinking about it now and will let you know soon."

12. La Sección 17 del Contrato, también establece lo siguiente:

   **"If Lessee or Tenant remains in possession of the premises with the consent of Lessor after the natural expiration of this agreement,** a new tenancy from month to month shall be created between Lessor and Lessee which shall be subject to all of the terms and conditions hereof except that rent shall then be due and

owing at Three Thousand, Four Hundred Dollars ($3,400 per month) and except that such tenancy shall be terminable upon Thirty (30) days written/email/text notice served by either party and utilities are not included."

13. La Parte Demandada le envió un mensaje de texto a la Parte Demandante el **28 de diciembre de 2021,** que indicaba lo siguiente:

"Good Morning, Dennis and Rosie. We are giving you 30 day notice. **We will not be renewing the lease after January 31st 2022.** Please have the apartment vacated by then. Thank you for your tenancy and we wish you well".

14. Los Demandantes le contestan a los Demandados lo siguiente:

"Isabel, we are not able to move until the end of March or April. We bought a place and it is being remodeled and won't be ready until then."

15. La Parte Demandada indicó que "ya tenía a otro inquilino que estaría firmando contrato el 1 de febrero de 2022".

16. La Sección 10 del Contrato, *Inspección* [*sic.*] *and access to premises*, entre otras cosas establece lo siguiente:

"Lessor and its agents shall further have the right to **exhibit** the premises and to **advertise** the premises at any time **within Sixty days before the expiration of this lease.**"

17. La Sección 25 del Contrato, *Surrender of premises*, entre otras cosas establece lo siguiente:

**"Upon the expiration of the term hereof,** Lessee or Tenant **shall Surrender the premises unoccupied,** broom cleaned and in as good a state and condition as they were at the commencement of this agreement, reasonable wear and tear accepted."

18. La Sección 32 del Contrato, *Modification*, establece lo siguiente:

"The parties hereby agree that this document contains the entire Agreement between the parties in this Agreement shall not be modified, changed, altered, or amended in any way except through a written amendment signed by all of the parties hereto."[6]

---

[6] *Id.,* págs. 1-19. (Énfasis en el original).

A base de lo anterior, el foro sentenciador concluyó:

> [L]os arrendatarios demandantes tenían hasta el vencimiento del contrato de arrendamiento el **31 de enero de 2022,** para ejercer la opción de renovar el mismo.
>
> […]
>
> [L]a parte demandante arrendataria no realizó ninguna gestión afirmativa para ejercitar dicha opción de renovar. Por tanto, la opción de renovar el contrato se extinguió, cuando el optante arrendatario dejó transcurrir el periodo dispuesto para el ejercicio de su derecho que vencía el **31 de enero de 2022.**[7]

Aun insatisfecho, el matrimonio Conklin acude al Tribunal de Apelaciones mediante una *Apelación Civil*, en la que alega la comisión de los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL AL DETERMINAR QUE EL INCUMPLIMIENTO DE LA PARTE DEMANDADA-APELADA OCURRIÓ UNA VEZ HABÍA VENCIDO EL CONTRATO DE ARRENDAMIENTO Y NO DURANTE LA VIGENCIA DE ESTE.
>
> ERRÓ EL TPI AL DETERMINAR QUE LA PARTE DEMANDADA-APELADA NO INCUMPLIÓ CON EL CONTRATO DE ARRENDAMIENTO, AUN CUANDO NO HONRÓ EL PERÍODO DE DELIBERACIÓN CONCEDIDO A LA PARTE DEMANDANTE-APELANTE.
>
> ERRÓ EL TPI AL DETERMINAR QUE LA PARTE DEMANDADA-APELANTE NO INCUMPLIÓ CON EL CONTRATO DE ARRENDAMIENTO, MOTIVO POR EL CUAL PROCEDÍA DESESTIMAR LA DEMANDA.
>
> ERRÓ EL TPI AL NO DICTAR SENTENCIA PARCIAL A FAVOR DE LA PARTE DEMANDANTE-APELANTE Y DESESTIMAR LA DEMANDA.

Luego de evaluar los escritos de las partes y los documentos que obran en autos estamos en posición de resolver.

**-II-**

**A.**

En nuestro ordenamiento jurídico el mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija

---

[7] *Id.,* pág. 17. (Énfasis en el original).

la celebración de un juicio en su fondo.[8] Así pues, para adjudicar en los méritos una controversia de forma sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente.[9]

En *Meléndez González et al. v. M. Cuebas,* el Tribunal Supremo de Puerto Rico, en adelante TSPR, estableció el estándar específico que debe utilizar el Tribunal de Apelaciones para revisar una sentencia sumaria, a saber:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, *supra*, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, … y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

> **Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil … y discutidos en *SLG Zapata-Rivera v. JF Montalvo*….

---

[8] *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).
[9] *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019); *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224-225 (2015).

**Tercero**, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[10]

**B.**

Los contratos constituyen una de las fuentes de las obligaciones en el ordenamiento jurídico puertorriqueño.[11] En el ámbito del derecho contractual rige el principio de libertad de contratación, según el cual los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público.[12]

El principio contractual de *pacta sunt servanda* establece la obligatoriedad del contrato según sus términos y las consecuencias necesarias derivadas de la buena fe.[13] De este modo, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos.[14] Así pues, los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su

---

[10] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119, 122 (2015). (Énfasis en el original) (citas omitidas).
[11] Art. 1063 del Código Civil de 2020, 31 LPRA sec. 8984.
[12] Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753.
[13] *BPPR v. Sucn. Talavera*, 174 DPR 686, 693 (2008).
[14] Art. 1233 del Código Civil de 2020, 31 LPRA sec. 9754.

naturaleza sean conformes a la buena fe, al uso y a la ley.[15]

**C.**

El TSPR definió el contrato de opción como un convenio por el cual una parte concede a la otra, por tiempo fijo y en determinadas condiciones, **la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal.**[16]

**Los elementos esenciales del contrato de opción son: (a) concesión por una parte a la otra de la facultad de decidir sobre la celebración o no del contrato principal, sin obligación alguna de ésta; (b) concesión de modo exclusivo; (c) por plazo cierto; y (d) sin otra condición que el propio juicio del optante.**[17]

Constituye una nota esencial de la naturaleza jurídica de la figura examinada que la facultad positiva del optante de ejecutar la opción se complementa con "…**la importante obligación negativa que incumbe al concedente de no celebrar contrato alguno con terceros que pueda resultar incompatible con el derecho del optante**".[18]

Finalmente, el contrato de opción termina si se observan algunas de las siguientes circunstancias, a saber: (1) mediante su ejercicio positivo y (2) por el

---

[15] Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9771.
[16] *Rosa Valentín v. Vázquez Lozada*, 103 DPR 799 (1975)*; PDCM Asoc.* v. *Najul Bez*, 174 DPR 216 (2008). (Énfasis suplido).
[17] *SLG Irizarry v. SLG García,* 155 DPR 713, 722 (2001). (Énfasis suplido).
[18] J. Puig Brutau, *Fundamentos del Derecho Civil*, 2.ª ed. rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 54. (Énfasis suplido).

transcurso del término pactado, sin que el optante ejerza tal derecho.[19]

**-III-**

Para adjudicar la presente controversia, atenderemos los señalamientos de error en conjunto.

Para los apelantes, el matrimonio Passalacqua incumplió con el contrato de arrendamiento, cuando antes de haber transcurrido el periodo de deliberación de la cláusula de opción, le arrendaron el apartamento a un tercero.

En cambio, para los apelados no hubo incumplimiento de contrato. Por el contrario, arguyen que "el matrimonio Conklin nunca se expresó positivamente a los efectos de que querían renovar el contrato por un año más (ni dentro ni fuera del plazo concedido), solo se limitaron a eventualmente indicar que interesaban un contrato de mes a mes hasta el mes de marzo". Por ende, insisten en que no hubo incumplimiento y que la "relación contractual entre las partes terminó con la extinción natural del contrato".

Luego de revisar *de novo* el expediente concluimos que los hechos esenciales del presente caso no están en controversia. En consecuencia, corresponde ahora revisar *de novo* si el foro recurrido aplicó correctamente el derecho sobre el contrato de opción de compra.

Como expondremos a continuación, resolvemos que no lo hizo. Veamos.

La cláusula 17 del contrato de arrendamiento concedía al matrimonio Conklin hasta el 1 de febrero

---

[19] *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002).

de 2022 para decidir, a su exclusivo arbitrio, si renovaban el contrato de arrendamiento del inmueble en controversia.[20]

No obstante lo anterior, 34 días antes de que se extinguiera el contrato de opción, es decir, el 28 de diciembre de 2021, la señora Passalacqua informó a los apelantes que no renovaría el contrato de arrendamiento.[21]

Peor aún, tres días mas tarde, la señora Passalacqua le notificó a la señora Conklin que había alquilado el apartamento a un tercero.[22]

Indiscutiblemente, la conducta de la señora Passalacqua violentó su importante obligación negativa de no alquilar el inmueble a un tercero mientras estuviera vigente la opción de arrendamiento. Olvidó, que en el contrato de opción en cuestión, la facultad de celebrar el contrato principal era exclusiva de los apelantes, siempre y cuando no hubiese transcurrido el término fijo pautado por las partes.

En fin, el comportamiento atropellado del matrimonio Passalacqua constituye un incumplimiento del contrato de opción que acarrea como consecuencia inescapable la indemnización de los daños sufridos por el matrimonio Conklin.

**-IV-**

Por los fundamentos previamente expuestos, se revoca la *Sentencia* apelada. En cambio, se declara ha lugar la *Moción de Sentencia Sumaria Parcial* presentada por los señores Dennis R. Conklin y Rosemarie Conklin y se resuelve que los señores

---

[20] Apéndice de los apelantes, págs. 68-70.
[21] *Id.* pág. 71.
[22] *Id.*

Michael J. Passalacqua e Isabel Passalacqua, incumplieron la cláusula de opción del contrato de arrendamiento suscrito entre las partes. Finalmente, se devuelve el caso al Tribunal de Primera Instancia para que determine el monto de los daños a los que son acreedores los señores Conklin.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones